This is an appeal from a judgment in the district court under which the plaintiff was awarded damages in the sum of $250 for the loss of its use, as cultivable land, of five acres of her farm, by over-flow, brought about by an artificial drainage created by the Department of Highways in the construction of a highway running east and west on the south edge of her property. Plaintiff had originally sued both the Department of Highways, designated at the time as the Louisiana Highway Commission, and the contractor who actually built the road, Barber Brothers Contracting Company, for $1,500. Certain exceptions filed on behalf of the contractor prevailed in the lower court and apparently her demand is now restricted to one against the Department of Highways. Plaintiff has answered the appeal asking for an increase in the amount of the award to the sum of $500. *Page 839 
After setting out the ownership of her property which comprises about thirty-six acres of land in the southeast quarter of the northwest quarter of Section 33, T. 2, S.R. 9 E, in Vernon Parish, forming an addition to the town of Rosepine, Louisiana, plaintiff avers that during the spring of 1940, the then Louisiana Highway Commission entered into a contract with Barber Brothers Contracting Company under which a highway was constructed during the summer of that year on a right of way granted by her along the southern boundary, from the southeast corner to the southwest corner of her property. She avers that in constructing the said highway, a fill or dump from three to five feet high was placed clear across the lower border of her land with a large culvert about at the middle in order to let the water flow from the south to the north side thereof. She alleges further that the drainage system for the said highway was constructed so as to divert the former natural flow of water on the west and southwest toward the east to the said culvert and also so as to divert the flow from the east and southeast to the west to the said culvert, thus causing all the drainage water from those sides of her farm to concentrate at that point, and as a consequence, following every rain-fall, heavy enough to produce flowing water, the water emptied on her property and her farm was over-flowed, a thing which never happened before the construction of the said highway. Without detailing her alleged damages she claims $1500, as already stated.
After its exceptions to the jurisdiction of the court, both rationae personae and rationae materiae, had been overruled, the Department of Highways, filed its answer. The exceptions apparently have been abandoned. In its answer the defendant sets out that on March 15, 1939, the plaintiff granted to the then Louisiana Highway Commission, a right of way forty feet wide across her land for highway purposes and that in building the highway over the same, the drainage ditches on each side were properly and correctly constructed, all in conformity with the natural structure of the surrounding territory and the natural flow of the water. That the placing of the culvert under the highway was a proper and correct procedure to properly drain the same and that it was constructed in accordance with the natural contour of the surrounding country. It is denied that the manner of construction of the highway, the drain, and the culvert were responsible for, or the cause of the damage to her property which plaintiff complains of, if indeed, she suffered any such damage.
It seems to be fairly well established that before the Department of Highways built this new road on the south of plaintiff's property the natural drainage was from south to north or northeast over her land as the eastern or northeastern end of it is shown to be lower than the rest of her property and those adjoining it on the south and west. As a matter of fact, it is admitted that there is a natural basin, referred to as a "draw" in that locality, about the center of her property. It is in the shape of a fan and extends even beyond the limits of her property, to the north. That being so, it would seem that her property was subject to that extent to a servitude of drainage as provided by Article 660 of the Revised Civil Code. The controversy therefore may be said to be limited to the single issue, whether the system of drainage established by the Department of Highways in constructing the road on her property has resulted in rendering that servitude more burdensome. If it has, the act of the Department of Highways was in contravention of a further provision of that same article of the Code and plaintiff would therefore be entitled to relief.
At the time of and prior to the construction of the highway, the road bed and tracks of the Kansas City Southern Railway paralleled plaintiff's property on the west. A spur track ran from the main track, southeast, and both it and the main track crossed the highway at a point near the southwest corner of plaintiff's property. In order to get the water off of the railroad bed and keep it from over-flowing the highway which was being built, the engineers considered it proper and practical to place a culvert under both the main and the spur track where they joined the highway on its north side and thus force that water eastward into the drainage along the highway. A concrete culvert was also placed across the highway at a point about opposite the basin on plaintiff's property to provide some relief from the water that would naturally concentrate there and let it find its way out to the south and southeast.
It is the contention of the plaintiff that prior to its diversion, the water coming from between the main and the spur tracks *Page 840 
of the railroad flowed slowly to the south and then into the ditch running east along the road as it existed at that time, until it reached an opening under a wooden bridge and then flowed slowly through the opening on to the basin on her property, and that the water on the west of the main track would flow north following the railroad track itself. Some of her witnesses testified that the placing of those culverts under the tracks has diverted the water from twenty acres of land more than before on her property. This of course is strongly disputed by the engineers of the Department of Highways who state that the drainage burden of plaintiff's property has not been increased by reason of the system which was installed, although from the testimony of one of them, Mr. B.H. Wade, we get the impression that probably the water from eight acres lying west of the main track might have been added to the flow through the culvert under that track. Whilst he states that those eight acres would naturally drain into the basin on plaintiff's property if it were not for the railroad tracks yet the fact remains that that was not the situation existing at the time the Department of Highways placed those culverts there. Counsel for defendant contends that even so, the Department of Highways has the right to alter the course of the drainage across the railroad tracks by virtue of the provisions of Act No. 140 of 1912 as amended by Act No. 182 of 1920. We however are unable to find any such authority in that act and are of the opinion that it is not applicable.
On the part of the defendant it should be stated that it is clearly shown by the evidence that there is a Parish dirt road adjoining plaintiff's property on the north side, which was very poorly drained and which was improved by the W.P.A., the work still going on at the time defendant completed its road on the south. The improvements consisted of raising the bed and placing a twenty-four inch pipe near the northeast corner of plaintiff's property in order to take care of the water. Because of the basin on her property right around that point, it is definitely established by the testimony of the engineers that that pipe is very much too small to afford any relief and the result is that the road as well as the property itself has often remained over-flowed. Another point on defendant's side also, arises out of the fact that the rain-fall was shown to have been exceptionally heavy in 1940, the year plaintiff complains of having had her farm overflowed, all of which only adds to the conflict that is presented in the testimony and the resulting difficulty with which the Court is faced in resolving the question at issue. The District Judge resolved it in favor of the plaintiff and to that extent we yield to his judgment as it is reasonable to conclude that the adding of eight acres of land more to the drainage on plaintiff's property made the servitude which it already bore a bit more burdensome.
We are unable to agree with the learned District Judge however, that the testimony shows that plaintiff has suffered the loss of five acres of her land which he valued at $50 per acre, by reason of the increase of drainage. It is indeed hard, if not impossible, to arrive at any definite added number of acres of her property that were over-flowed because there is no way of telling how much water was added by the excessive rain-fall of the summer and how much more from the added water on the north side of her property. In the absence of specific proof as to the actual damage suffered, we have concluded to award nominal damages which are hereby assessed at the sum of $50.
Our attention is called to Act No. 135 of 1936 under the provisions of which public boards as well as the State and its political subdivisions are relieved from the payment of Court costs, except those of the stenographer, in any judicial proceeding. In the recent case of Westwego Canal Terminal Co., Inc., v. Louisiana Highway Commission, 200 La. 990, 9 So.2d 389, the Supreme Court held that the provisions of this Statute did not apply in an expropriation suit because the costs of Court incurred by the successful plaintiff in such proceeding constituted an element of the damage suffered when his property was taken for public purposes and for which he had to receive adequate compensation under Sec. 2 of Art. 1 of the Constitution of 1921. Whilst this is not an expropriation suit it is nevertheless one for damages to plaintiff's property, part of which was used for public purposes. The Constitutional provision referred to does not restrict the damages to property taken in an expropriation suit but applies to all property taken for public purposes and under the interpretation placed on the statute by the Supreme Court in the cited case, it would seem that the defendant in this case is bound at least for whatever costs were *Page 841 
incurred herein by the plaintiff as well as stenographer's fees.
For the reasons stated it is now ordered that the judgment appealed from be amended by reducing the amount of the award from the sum of $250 to the sum of $50, and also by limiting the amount of costs to be paid by the defendant to those incurred by the plaintiff herein as well as the stenographer's fees, and that as thus amended, it be affirmed.